## E. A. Batcheldor and Nellie Batcheldor v. George F. Jennings.

1. GUARANTY—*Effect of Surrender of Collateral Securities.*—A surrender by the holder of a note, of collateral security received from the principal, will not discharge the guarantor, if made with his knowledge and assent.

Assumpsit, against the guarantor on a promissory note. Trial in the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Finding and judgment for plaintiff; error by defendant. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed July 11, 1899.

E. F. GORTON and GEORGE W. BROWN, attorneys for plaintiffs in error, contended that any variation of original contract of the parties, if made without his consent, discharges the surety.

If the duties which the principal is to perform are varied by agreement between the principal and obligee after the surety for the conduct of the principal has become bound, such surety will thereby generally be discharged.

Any dealings between the principal and obligee amounting to a departure from the contract by which the surety is bound, and materially varying or enlarging his liabilities without his consent, will generally operate to discharge him. Ridgeway v. McCartney, 160 Ill. 129; 57 Ill. App. 453; People v. Seelye, 146 Ill. 189; Warner v. Campbell, 26 Ill. 282; Gardiner v. Harbach, 21 Ill. 129; Brandt, Suretyship & Guar. (2d Ed.), Secs. 397, 395, 393 (and collection of cases).

The undertaking of a guarantor is to be strictly construed in his favor. Barclay v. Warne, 143 Ill. 19; Rice v. J. A. Tohnan Co., 60 Ill. App. 516; Dupee. v. Blake, 148 Ill. 453; People, use of, etc., v. Foster, 133 Ill. 496; Schreffler v. Nadelhoffer, Id. 536; Burlington Ins. Co. v. Johnson, 120 Ill. 622.

It is a defense for a surety at law that the creditor has wrongfully deprived the surety of recourse to collateral security held by the creditor, to which the surety had the right of subrogation. Hawkins v. Harding, 37 Ill. App. 564.

Where the payee of a note takes collateral security, he takes it as trustee, not for the maker alone, but also in trust for the guarantors on the note.

If such payee parts with or changes the nature of this trust fund, he releases the guarantors to the extent of the

injury sustained by them.  Phares v. Barber, 49 Ill. 370; Rogers v. School Trustees, 46 Ill. 428; Hall v. Hoxsey, 84 Ill. 616; Kaufman v. Loomis, 13 Ill. App. 124; Kirkpatrick v. Howk, 80 Ill. 122; Monmouth Nat'l Bank v. Whitman, 66 Ill. 331.

JAMES C. McSHANE, attorney for defendant in error.

The most important consideration as to the pledgee's duty in relation to collateral security is that perfect good faith should be observed by him in his dealings therewith. If he acts in good faith the pledgor can not complain. Only in cases of fraud or gross negligence on the part of the pledgee can he be held to a stricter account. Cole-brooke on Collateral Securities, Sections 114, 115; Black River Bank v. Page, 44 N. Y. 453; Wells v. Wells, 53 Vt. 1; Brandt on Suretyship and Guaranty, Secs. 384, 390, 392.

A person with whom a note or anything else is pledged is in respect to the same a trustee bound to respond and account for the same as a trustee, and liable to be charged for neglect or misconduct like any other trustee. The pledgee of a promissory note is held to the exercise in respect to the same of such diligence as a prudent man would exercise in respect to his own affairs. Colebrooke on Collateral Securities, Secs. 114, 115; Union National Bank v. Post, 64 Ill. App. 409.

Taking a note as collateral security to another note, upon which there is an absolute guaranty, as transferring the collateral note, the original all the time remaining in the hands of the payee, does not release the guarantor. Penny v. Crane Bros. Mfg. Co., 80 Ill. 244.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The Lexington Hotel Building Company, a corporation, made its promissory note for $6,000, payable to the order of Jennings, the defendant in error, seventy days after date, and the Bacheldors, the plaintiffs in error, at the same time guaranteed the payment thereof at maturity by

their guaranty in writing indorsed on the back thereof, and being so made and guaranteed, the note was delivered to Jennings. The note was given for a loan of money to the company. This suit was brought by Jennings against the guarantors upon their said contract of guaranty.

A jury was waived and the cause was submitted to the court, who gave judgment for Jennings.

The defense was made under a verified plea of the general issue. The evidence in support of the defense shows that at the time Jennings took the note, and as a part of the same transaction, the maker of the note, the building company, delivered to Jennings six thousand dollars' worth, at their face value, of second mortgage bonds made by the building company, as collateral security for the payment of the note, and that subsequently he, Jennings, gave up the bonds so held by him, and took in substitution therefor an equal amount of other bonds issued by the building company. Said bonds so substituted were a part of a series of bonds issued for the purpose of retiring the series of bonds of which those forming the original collateral were a part, and were for a hundred thousand dollars greater amount, and matured at a much later period of time.

The plaintiff in error, E. A. Bacheldor, is the husband of Nellie Bacheldor, and was president of the building company and the active manager of its affairs. He transacted all the business with Jennings, and participated in the exchange of collaterals, and it is not claimed that he was released by reason of the change in or substitution of the collateral security. Nellie Bacheldor knew that the old bonds had been retired and the new ones issued, but did not have actual knowledge of the particular transaction with defendant in error in which he gave up the original and accepted the new bonds as collateral security, and the claim is that she is released from her contract of guaranty because of such transaction.

It appears by modifications made by the trial judge in certain propositions of law submitted to him in behalf of the Bacheldors that he, by necessary intendment, found from

the evidence that E. A. Bacheldor acted as the authorized agent of Nellie Bacheldor in the entire matter, and therefrom drew the conclusion of law that she was chargeable with knowledge of all that was done by him while so acting for her.

If the proved facts and circumstances fairly warrant the finding that such relationship of agency existed, the conclusion of law reached is certain to follow, for there is no doubt but that Mr. Bacheldor knew of and took part in every transaction with Jennings in respect to the matters in question.

E. A. Bacheldor was the president and active manager of the corporation that made the note. The note is executed in the name of the corporation by him as its president. It does not appear where or when the guaranty was signed by either himself or his wife, except that it was done before the note was delivered. He had the note in his possession in the office of one Jenkins, where it and the bonds were delivered by him to Jennings, and Mrs. Bacheldor was not present. He must therefore be held to have been the agent of Mrs. Bacheldor for the delivery of the note, and in respect to the transaction in which it was delivered. Such is the unmistakable inference, and that being so, Mrs. Bacheldor is bound with the knowledge he, as her agent, had, that Jennings accepted the note and the collateral bonds.

She subsequently knew personally that Jennings continued to hold the note, for after a receiver of the building company, maker of the note, was appointed in some other suit, she told Jennings she would see that the note "was fixed up and settled," and that he should "never lose a cent on it."

She also knew of the new issue of new bonds to take the place of the original ones, and of the retirement of the latter. It is difficult to understand how she could have known of the new issue and its object, and that the old bonds were retired by the new ones, without knowing that there had been an exchange made with Jennings. The inference is strong that she did know it.

The admission at the trial that if examined she would testify "she knew nothing about the exchange of collateral," ought not, in the face of the other evidence and circumstances, to stand as meaning anything more than that she did not know anything about the actual occurrence of the exchange.    Mr. Bacheldor conducted that exchange of bonds and saw personally to the cancellation of the original ones. The only evidence tending to show that Mr. Bacheldor's relationship of agent for Mrs. Bacheldor with reference to the   subject-matter  of  the  note,  which  existed   when he delivered the note guaranteed by her, terminated with that particular transaction, is his testimony that she "always acted for herself in everything that required her to act."

Besides such original agency the trial judge had before him  the  evidence  of  Mrs.  Bacheldor's  knowledge  of  the issuance  of  the  new and  the retirement  of  the  old  bonds and her knowledge  that the note remained unpaid in  Jennings' hands at the time the new bonds were issued. Taking all the positive evidence into consideration, and the surrounding circumstances, with the legitimate inferences to be drawn from both, and having in mind settled rules concerning the weight that the findings of fact made by a trial court upon evidence adduced at the trial, are entitled to by a reviewing tribunal, we ought not in this case to hold that the facts of agency by Mr. Bacheldor and of knowledge and assent by Mrs. Bacheldor, which by necessary intendment were found to exist by the trial court, were without sufficient evidence to support them.    And such is our duty, notwithstanding we might hold otherwise if this were an original hearing.

We concur with appellants in their contentions concerning the effect upon a contract of guaranty or suretyship in case of a change in collaterals deposited with the holder by the maker of a promissory note, made between the maker and the holder of the note without the knowledge or assent of the guarantor or surety, but when such knowledge or assent appears the whole contention falls.

Some argument is expended upon the point that Jennings extended the time for the payment of the note and thereby

the guarantors were released. It is enough to say upon that question, that the evidence wholly fails to show that any valid and binding extension was ever made.

The point is made that the judgment is in excess of the amount of principal and unpaid interest on the note, and it would so appear, but not to the extent claimed.

Recognizing error in that regard, the defendant in error has voluntarily entered a remittitur in this court of $435, from the judgment of $6,900 that was rendered by the Circuit Court, and has thereby confessed error to such extent.

An examination of the evidence shows that such remittitur is sufficient to cure the excess for which judgment was rendered, and the order is that the judgment of the Circuit Court be affirmed for the balance of $6,465, but at the costs of defendant in error.

Affirmed for amount remitted down to.